FILED
2017 Nov-06  PM 04:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **CORY SEAY,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| | ) | |
| **v.** | ) | |
| | ) | **JURY DEMAND** |
| | ) | |
| **DESHAZO CRANE COMPANY, LLC,** | ) | |
| **and CHUCK TUCKER,** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

_____

## COMPLAINT

_____

### I. JURISDICTION

1.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 1343(4). This is a suit authorized and instituted pursuant to Title VII of the Act of Congress known as the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 and 42 U.S.C. §1981, as amended, and state law claims. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights secured by 42 U.S.C. §2000e *et seq.* and 42 U.S.C. §1981, providing injunctive and other relief against racial discrimination, racial harassment and

retaliation in employment and state law prohibiting negligent retention and supervision.

## II.  PARTIES

2.     Plaintiff, Cory Seay, is citizen of the United States and is a resident of Calera, Alabama.

3.     Defendant, DeShazo Crane Company, LLC ("DeShazo"), is a Corporation doing business in the State of Alabama.  At all times relevant to this action, Defendant has maintained and operated a business in Alabama.  Defendant is engaged in an industry affecting commerce and has fifteen (15) or more employees within the meaning of 42 U.S.C. §2000e(b), (g) and (h).

4.     Defendant, Chuck Tucker, ("Tucker") an individual, is over the age of majority and is a resident of this judicial district.  Tucker, who is being sued in his individual capacity, is subject to suit under 42 U.S.C. § 1981.  At all relevant times for purposes of this lawsuit, Tucker was employed by DeShazo.

## III.  ADMINISTRATIVE PROCEDURES

5.     Plaintiff hereby adopts and realleges paragraphs one (1) through four (4) above as if fully set forth herein.

6.     Plaintiff brings this action for the unlawful employment practices and acts of intentional discrimination, harassment and retaliation that occurred at DeShazo Crane.

2

7.     This action seeks to redress unlawful employment practices resulting from the acts of Defendants, their agents, servants, and employees committed with respect to Plaintiff's employment; and for a permanent injunction restraining Defendants from maintaining a habit and/or practice of discriminating against the Plaintiff and others similarly situated on account of race discrimination and harassment and/or subjecting Plaintiff to retaliation.

8.     On June 10, 2016, within 180 days of the last discriminatory and retaliatory act of which Plaintiff complains, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") (Attached hereto as Exhibit A).

9.     Plaintiff's Notice of Right to Sue was mailed by the EEOC to the Plaintiff on August 23, 2017, and Plaintiff filed suit within ninety (90) days of receipt of his Notice of Right to Sue (Attached hereto as Exhibit B).

10.     On August 12, 2016, within 180 days of the last discriminatory and retaliatory act of which Plaintiff complains, Plaintiff filed a second Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") (Attached hereto as Exhibit C).

11.     Plaintiff's Notice of Right to Sue was mailed by the EEOC to the Plaintiff on August 10, 2017, and Plaintiff filed suit within ninety (90) days of receipt of his Notice of Right to Sue (Attached hereto as Exhibit D).

3

12.     All administrative prerequisites for filing suit have been satisfied, and Plaintiff is entitled to bring this action.

## IV. FACTS

13.     Plaintiff hereby adopts and realleges paragraphs one (1) through twelve (12) herein above as if fully set forth herein.

14.     Plaintiff, Cory Seay, is an African-American male.

15.     Plaintiff was hired by DeShazo to work as a welder in 2014 at its Calera, Alabama location.

16.     Although Plaintiff is a certified welder, Caucasian welders who are not certified were paid more than Plaintiff.  When Plaintiff complained of disparate pay based on his race or asked for a raise, DeShazo would move him to the Paint Department and/or DeShazo/Tucker would issue Plaintiff disciplinary actions used as a reason to not give Plaintiff a raise.  While working in the Paint Department, Plaintiff's direct supervisor was Michael Kennedy, African-American.  Welding is the preferred job over painting.  African-American employee Fernando James is another welder who was sent to the Paint Department when things were slow in the Welding Department while less qualified Caucasians in the Welding Department were not sent to the Paint Department.

17.     From the time Plaintiff began his employment with DeShazo, he has heard the word "nigger" used repeatedly at DeShazo.

4

18.     During the entirety of his employment with DeShazo Crane from 2004 to 2017, Plaintiff was subjected to racial slurs, racially derogatory jokes and racially derogatory comments, racial symbols, racially offensive and threatening graffiti. Further, he was subjected to discriminatory and retaliatory discipline and assignments and subjected to intimidation based on race on a regular basis.

20.     During the entirety of his employment, Plaintiff heard members of management, including Chuck Tucker, Caucasian Vice President of Manufacturing and Elzie Green, Caucasian Supervisor of the Fabrication Department use the word "nigger" on a regular basis.  Tucker and Mr. Green also told racist jokes and talked down to African-Americans in the workplace.

21.     One specific example of racially threatening graffiti was the drawings on the wall of the men's restrooms at DeShazo.  The graffiti included a drawing of a tree with a noose hanging from it and racist epithets, including the word "nigger" written on the wall.  Plaintiff saw the graffiti on the restroom walls at DeShazo from the time his employment began in 2014 and it remained there until approximately May 2016. Shortly after another African-American employee of DeShazo, Michael Kennedy, filed a lawsuit against DeShazo and Chuck Tucker, the same Defendants in Plaintiff's case, for race discrimination, race harassment and retaliation, the graffiti was removed.   Magazines and joke books with racist images were in the bathroom at the Alabaster plant from 2014 until 2016

after Michael Kennedy filed his lawsuit.  On May 6, 2016, Michael Kennedy,

African-American filed suit against Defendants DeShazo and Tucker (United States

District Court for the Northern District of Alabama, Southern Division, 2:16-cv-

00741-RDP) for employment discrimination, including claims that Defendants

subjected to a hostile work environment and a retaliatory hostile work environment;

discriminated against African-Americans in relation to pay; that Defendants

constructively discharged him; that Defendants' conduct was outrageous; and that

Defendant DeShazo negligently or wantonly supervised, trained and retained

employees.  Specifically, Kennedy claimed that "during the entirety of his

employment with DeShazo Crane from 2008 to 2016, [he] was subjected to racial

slurs, racially derogatory jokes and racially derogatory comments, racial symbols,

racially offensive and threatening graffiti, discipline, assignments and intimidation

on a regular basis" and that in 2013, "Don Vining, Caucasian, Plant Foreman in

Bessemer, made the statement that it was 'just like a nigger to steal.'"  Plaintiff

Kennedy claimed that "employees had Confederate flag stickers on their vehicles

parked on company property and wore t-shirts with Confederate flags on them in the

workplace" and that he "observed a Caucasian employee, 'K.C.' (lnu) wearing a

hard hat with 'KKK' written on it in permanent marker."  Kennedy claimed

that "[r]acially threatening graffiti was on the bathroom walls at the Alabaster

location for DeShazo, including the word "nigger" being written on the wall and a

drawing of a tree with a noose hanging down drawn on the wall" and that "[m]agazines and joke books with racist images were in the bathroom at the Alabaster plant."  On May 14, 2015, Kennedy filed a Charge of Discrimination with the EEOC.  Kennedy claimed that "[w]ithin a couple of weeks after [he] filed his EEOC charge, a dead rat was left in [his] locker at DeShazo's work site" and that he was further retaliated against through retaliatory work assignments and retaliatory discipline.  . Despite this lawsuit, Defendants took no steps to correct or prevent further racial discrimination, racial harassment or retaliation other than removing the racially threatening graffiti from the bathroom walls.

22.     Further examples of Caucasian employees and members of management making derogatory racist statements include the statement made by Dave Wheeler.  Dave Wheeler, Caucasian Quality Control Manager, stated "we just need to go back to hanging them" in reference to African-Americans.  He said "when they see the eyes pop out and the bowels move all over them, they won't do that stuff anymore," again referring to African-Americans.

23.     Another Caucasian employee at DeShazo, Roger Vander slice, Supervisor, regularly used the word "nigger" at DeShazo.  Once, Plaintiff heard Mr. Vander slice say "coon pecker make a nigger run straight."

24.     Elzie Green, Caucasian, Fabrication Supervisor who was supervised

by Chuck Tucker, made a racially derogatory Facebook post on April 28, 2015.

Green showed the post to others at work.  The post was about the Baltimore,

Maryland race riots after the death of Freddy Gray.  Green posted that "[i]f they

start shooting them mf in Baltimore, they will stop all that stuff... ."  It also said

"cut there (sic) checks out for food stamps thanks Obama."  In the top left corner of

the post was a picture of a man aiming a rifle or shotgun.  When Human Resources

at DeShazo became aware of the post, it failed to act other than telling Green to

remove the post.

25.     In April 2015, DeShazo hired Jeff Stapleton, Caucasian, as Paint

Supervisor, the same position also held by Michael Kennedy, African-American,

who was Plaintiff's supervisor.  Tucker told Mr. Stapleton that he was to

"get rid of them Blacks."  Mr. Stapleton objected to this instruction and was

terminated.  On April 28, 2017, Jeff Stapleton, Caucasian, filed a lawsuit against

Defendants DeShazo and Tucker (United States District Court for the Northern

District of Alabama, Southern Division, 2:17-cv-00692-JEO).  Stapleton accuses

Defendants of racial discrimination, racial harassment, retaliation, assault, false

imprisonment, outrageous conduct, negligent retention, negligent training and

negligent supervision.  Specifically, Stapleton was being interviewed by Defendant

Tucker to work at DeShazo to replace Mike Kennedy, African-American male, the

current Paint Supervisor.  Defendant Tucker stated that Mr. Kennedy had "'sucked

8

me (Defendant Tucker) right in' by hiring African-Americans to work on Mr. Kennedy's crew and that they had to go."  In reference to Mr. Kennedy's African-American crew members, Stapleton claims Defendant Tucker said they were "worthless, stupid, unclean, unable to follow directions and were illiterate." Stapleton claims Defendant Tucker said that "the African-American crew members would shake their heads like little monkeys when they were told they were doing something wrong."  Stapleton claims that he witnessed Defendant Tucker stating "you see how stupid these niggers are?"  when Defendant Tucker saw Desi Fomby using a siphon incorrectly.  Stapleton claims Defendant Tucker showed Stapleton a crane that Tucker said the Paint crew had messed up by placing a decal in the wrong place.  Defendant Tucker called Elzie Green, Caucasian Fabrication Supervisor, over the radio and told him to bring the blueprint for the crane because the "niggers fucked up." In the meantime, Dave Wheeler, Caucasian Quality Control Supervisor, and Don Vining walked up.  Mr. Wheeler said the placement of the decal was actually correct.  Defendant Tucker then called Elzie Green back over the radio where he could be heard by everyone with a radio, including Mr. Kennedy, and said those "niggers" didn't mess up as bad as he had thought.  Stapleton claims Defendant Tucker met with him privately in Tucker's office.  Once inside Tucker's office, Defendant Tucker told Stapleton he wanted Stapleton "to get rid of them Blacks." When Stapleton asked exactly who he was supposed to "get rid of," Defendant

Tucker said that he wanted all the "niggers" out of DeShazo.   While working at DeShazo, Stapleton claims he ran into Nick Vincent, Caucasian Human Resources Manager.   Stapleton asked Vincent about EEO training at DeShazo and Vincent confirmed that there was no EEO training.   After starting work at DeShazo, Stapleton did not terminate the African-American employees.   As a result, Stapleton claims that Elzie Green warned Stapleton that he was supposed to do things "the DeShazo way."   Stapleton claims Green intentionally sabotaged the work of the mostly African-American Paint crew to the point that Stapleton had the crew move the jobs around to avoid the sabotage.   Stapleton confronted Green and Don Vining about the sabotage and they both laughed and said that Stapleton didn't get it - that when Stapleton started doing what Defendant Tucker told him to do - getting rid of those "niggers" - then maybe his job might last and his life would be easy at DeShazo. Stapleton claims Green also taunted Stapleton by saying that he needed to get rid of all the "niggers."   Green tried to force Stapleton to write up the African-Americans for mistakes they did not make.   Stapleton claims that when he refused to do so, Green said that funny things happen when people don't do what they are told to do. Shortly thereafter, Stapleton noticed that someone had gone through his truck which was parked in the company parking lot. While at DeShazo, Stapleton claims he saw an employee wearing a hard hat with "KKK" written on it and Stapleton confronted him.   The employee told Stapleton that if he had a problem with his hard hat, he

(Stapleton) would not last long at DeShazo. Stapleton also saw Confederate flags on DeShazo property. During the second week of his employment with DeShazo, Stapleton claims Elzie Green told Stapleton about something that he (Green) had posted on Facebook. This was during the time of the Baltimore race riots after the death of Freddie Gray. Green asked if Stapleton had heard about what was going on in Baltimore and said that same thing could happen "here" if Stapleton didn't do something about it. Green then showed Stapleton the Facebook posting on his cell phone. It said "[i]f they start shooting them mf in Baltimore, they will stop all that stuff." It also said "cut there (sic) checks out for food stamps thanks Obama." There was a picture of a man holding a gun in the corner of the post. Green then said that "we" (Caucasians) need to start shooting "them" in the head and hanging "them" (African-Americans) and that maybe he (Green) ought to start it. When Stapleton told Green his Facebook post was wrong, Green responded by asking if Stapleton was worried that he would shoot Stapleton's "little black buddies." Stapleton claims he immediately went to report Green's Facebook posting. Stapleton first went to Cindy Jones, Caucasian female Project Manager, and told her about the post. Ms. Jones pulled up the Facebook posting and saw it for herself. Ms. Jones then told Nick Vincent, Caucasian Human Resources Manager, about the post and he just laughed and said that he would handle it. Both Ms. Jones and Mr. Vincent told Stapleton that his report would be kept confidential. On May 8, 2015, Stapleton's

11

last day of work at DeShazo, Stapleton claims Green called him over the radio to come to his office.   When Stapleton got to Green's office, Don Vining, Caucasian Plant Manager, was in the office with Green.   They gathered close to Stapleton, surrounding him.   Green physically removed Stapleton's hard hat from his head and Mr. Vining blocked the door so that Stapleton could not exit.   It was only after Stapleton threatened to call 911 that he was allowed to leave. Stapleton placed a call to Defendant Tucker, his supervisor, and also sent him text messages asking him to call Stapleton about what had transpired that day at DeShazo.   Instead of getting a call from Defendant Tucker, Stapleton received a call later that day informing him that his services were no longer needed at DeShazo.

26.     Charles (lnu), Caucasian, brought a Facebook screen shot of an AK47 gun, painted with a Confederate flag, to work.

27.     Plaintiff observed a Caucasian employee, Casey Childers, wearing a hard hat at work at DeShazo with a racist emblem on it in permanent marker.

28.     In April 2016, DeShazo hired a new supervisor, Anthony Bradford, African-American.   Mr. Bradford told Plaintiff that DeShazo told him that he was hired to get rid of the African-American employees.   Mr. Bradford refused to do so and was fired.

29.     Employees had Confederate flag stickers on their vehicles parked

on company property and wore t-shirts with Confederate flags on them in the workplace. On May 27, 2016, Plaintiff saw a Confederate flag hanging from the front bumper of a vehicle in DeShazo's parking lot. The large flag was in clear view of all employees. Plaintiff tried to complain to Human Resources but no one was in the office that day.

30.    When Plaintiff complained about employees wearing Confederate flag symbols, Nick Vincent, Caucasian Manager of Human Resources, told Plaintiff he could not do anything about Confederate flags on employees' clothing or hardhats because the flags were "on private property."

31.    Prior to Plaintiff making a complaint of race discrimination on May 27, 2016, Chuck Tucker, Caucasian Vice President of Manufacturing, had always refused to shake Plaintiff's hand. However, the day after Plaintiff made the complaint of discrimination, Tucker shook Plaintiff's hand.

32.    On June 10, 2016, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation.

33.    On August 3, 2016, fifty-four (54) days after filing his Charge of Discrimination with the EEOC, Tucker told Plaintiff he had to submit to a drug test because an unnamed co-employee reported that Plaintiff was "high" at work. Other than the routine drug test administered to every new hire, Plaintiff had not been

required to submit to a drug test during the two-plus years of his employment with DeShazo until August 3, 2016, less than two (2) months after complaining of race discrimination and retaliation.

34.    Plaintiff submitted to the drug test and was told he could not return to work until the results of the drug test came back.  On August 10, 2016, Plaintiff was told the results of the drug test – the results were negative for drugs in Plaintiff's system.

35.    Despite the negative drug test results, Tucker wrote Plaintiff up on August 11, 2016 for being "impaired" at work on August 3, 2016.  The write-up was a final, written warning.  Although it stated that the drug test results were negative, Plaintiff was written up anyway.  Plaintiff refused to sign the write-up.

36.    On the other hand, when Caucasian employees actually went to work at DeShazo while obviously impaired due to drugs or alcohol, they were either never tested or were not disciplined even if they had a positive drug/alcohol test.  For instance, Bubba Wooley, Caucasian, worked on the night shift.  Wooley came to work one night so impaired that he was crawling because he could not walk and he could not hold a conversation.  Mr. Wooley passed out in a chair and the night foreman called Chuck Tucker.  Tucker came to the scene and told Mr. Wooley to get his tools and report to the first shift with him.  Mr. Wooley was not tested for drugs nor was he disciplined in any way.  Mr. Wooley, Caucasian, who had never

14

filed a claim of discrimination against DeShazo/Chuck Tucker, was not disciplined and, in fact, was not even tested.  Plaintiff, African-American, who had filed a claim of discrimination, was tested – and tested negative – and was nonetheless disciplined.

37.     Ben Eatres, Caucasian, is an employee of DeShazo.  In approximately July, 2016, he was reported to be "high" at work. Mr. Eatres tested positive for two drugs – Buprenorphine (a narcotic) and Benzodiazepines (tranquilizers).  Mr. Eatres was only given a verbal warning, the minimum discipline under DeShazo policy, for testing positive for the two drugs.  Defendants claimed Mr. Eatres had a prescription for these drugs.  Mr. Eatres had never complained of discrimination at DeShazo and had not engaged in protected activity.

38.     During Plaintiff's employment, the only training he ever received related to safety matters.  No training was ever conducted on EEO matters.

39.     In 2001, Defendants were sued by Columbus Pruitt and Tony Rose, African-Americans, (United States District Court for the Northern District of Alabama, Southern Division, CV-01-PWG-2649-S) for employment discrimination based on race and for outrage, assault and battery and negligent retention.  Specifically, Plaintiffs claimed they "were continuously subjected to the use of racial slurs and epithets, including the use of the word 'nigger.'  The harassment also consisted of the use of racially offensive jokes, including employees reading from a

15

book containing racially offensive jokes, including employees reading from a book containing racially offensive jokes, and making comments about the Ku Klux Klan." Plaintiffs further complained they "were subjected to racially offensive symbols, including confederate flags prominently displayed in the workplace. The bathroom walls were used by employees to write derogatory and racially offensive comments and drawings about the plaintiffs and/or their race." Plaintiffs claimed that "[s]upervisory and management employees were aware of and participated in the racial harassment" and that "[a]lthough the plaintiffs complained to management about the harassment, the company took no action to discourage or prevent the illegal activity." Plaintiff Rose claimed that "[t]he harassment also included physical assault and intimidation" as he "was physically pushed and kicked by [an] employee." Plaintiff Rose claimed Defendant Tucker was informed of the assault on Rose and took no corrective action. Plaintiff Rose claimed that he "was forced to resign his employment due to the continued pervasive racial harassment and danger to his personal safety." The complaint claims that after Plaintiff Rose left his employment with Defendant DeShazo, Plaintiff "Pruitt became the only African-American employee in the electric shop, and the harassment increased." Plaintiff Pruitt claimed that "[o]n one occasion, Pruitt discovered that other employees had tampered with his lunch, including, contaminating his food with a liquid substance that appeared to be urine." Plaintiff Pruitt claimed that he complained to Defendant

Tucker but no action was taken in response to his complaints.  Plaintiff Pruitt claimed

Defendant "Tucker was a participant in the racially harassing behavior" and that

"[b]ecause the working environment was intolerable, Pruitt was forced to resign his

employment…."  .  Despite this lawsuit and

settlement, Defendants took no steps to correct or prevent further racial

discrimination, racial harassment and retaliation.  Although Defendants train the

employees on many matters, Defendants provided no training on EEO matters.

40.     On April 29, 2016, Defendant DeShazo was sued by Corey Wilson,

African-American (United States District Court for the Northern District of

Alabama, Southern Division, 2:16-cv-00705-RDP) for employment discrimination

based on race, including claims that DeShazo subjected African-American

employees to a racially hostile work environment and discriminated based on race

in relation to pay.  .  Despite this lawsuit, Defendant

took no steps to correct or prevent further racial discrimination, racial harassment

and retaliation.  In 2017, Mr. Wilson filed a new Charge of Discrimination with the

EEOC against Defendant DeShazo alleging race discrimination and retaliation.

41.     On May 26, 2016, Defendant DeShazo was sued by Cornelius Harris,

African-American, (United States District Court for the Northern District of

Alabama, Southern Division, 2:16-cv-00867-LSC) for, among other things, racial

discrimination.  .  Despite this lawsuit, Defendant took

no steps to correct or prevent further racial discrimination.

42.     On August 19, 2016, Desi Fomby, African-American, filed a Charge of Discrimination against Defendant DeShazo alleging race discrimination and retaliation.  Fomby claimed that DeShazo/Chuck Tucker required him to submit to a drug test on August 3, 2016 and the result of the drug test was negative.  Despite the negative test result from the drug test, Fomby was disciplined on August 11, 2016 for substance abuse impairment on the job.  The Disciplinary Written Warning issued said that Fomby tested negative for drugs.  Fomby was fired from DeShazo for substance abuse impairment on the job.  Fomby claimed that since he first began working for DeShazo, he had heard the word "nigger" used repeatedly at DeShazo. Further, he had been asked "what are you going to eat for lunch? Watermelon? Chicken?"  Fomby claimed that Chuck Tucker took him to go to lunch in early August 2016 for the first time and he asked Fomby if he was going to order chicken. Fomby claimed that when David Wheeler (Caucasian) was acting Human Resources Director, talked about the election of President Obama.  According to Fomby, Wheeler said "we needed to go back to hanging people and put it on live TV" while talking about "hanging drug dealers and gang bangers" and was referring to African-Americans.  Fomby claimed that Anthony Bradford (African-American), Paint Supervisor, told Fomby that he (Bradford) was hired to fire the Blacks per Chuck Tucker's orders and that when he didn't do that, he was fired.  Fomby claimed that

Jeff Stapleton (Caucasian), Paint Supervisor at DeShazo, told Fomby that Tucker had hired him to get rid of the Blacks. When he didn't do so, he was fired. Fomby claimed that Tucker once called him "stupid" and always spoke to him with no respect – that Tucker talked down to him and tried to set him up to fail. Fomby claimed that when he was in a supervisory position, he was excluded from the supervisors' meetings. Fomby took FMLA leave in 2015 when his son had to have surgery. The leave was unpaid. Fomby claimed that Caucasians who had to take leave were allowed to have other employees donate leave so that their FMLA would be paid but that he was not allowed to accept leave from others. Fomby claimed that Roger Vanderslice (Caucasian) and Ben Eatres (Caucasian) each took leave but were paid as a result of donated leave. Fomby claimed that he saw Confederate flags, people wearing t-shirts and bandanas with Confederate flags and tool boxes with Confederate flag stickers on them while at DeShazo, that he saw a Confederate flag on a DeShazo company truck and that Casey Childress (Caucasian) wore a hardhat in the workplace that had "KKK" written on it. Fomby claimed that he saw racist graffiti drawn on the wall in a stall in the bathroom and a drawing of a noose and a head with the tongue hanging out. Fomby claimed that he had never been trained on EEO matters – the only training he received was related to safety. On September 9, 2016, Fomby filed a second Charge of Discrimination against DeShazo with the EEOC alleging further race discrimination and retaliation. Defendant DeShazo

settled Fomby's claims against it.  However, Defendant took no steps to correct or prevent further racial discrimination.

43.     On August 19, 2016, Keeland Turner, African-American, filed a Charge of Discrimination against Defendant DeShazo alleging race discrimination and retaliation.  Turner claimed that he was subjected to disparate pay at DeShazo based on his race.  Turner complained to the Paint Supervisor that he thought the pay disparity was racist.  Shortly after making his complaint of race discrimination, Turner was terminated.  Turner claimed that Defendant Tucker talked down to the African-Americans on the Paint crew and belittled them and that they were given no respect from Tucker. Turner claimed that he saw a Confederate flag on a motorcycle and on a truck parked in the DeShazo company parking lot.  While working at DeShazo, Turner claimed that he learned that David Wheeler (Caucasian) Quality Control Supervisor said to bring back nooses and broadcast it on live TV and that would stop these Blacks from all their killing and raping.   Turner was never trained on any EEO policies while working for DeShazo. Defendant DeShazo settled Turner's claims against it.  However, Defendant took no steps to correct or prevent further racial discrimination.

44.     In 2016, Kenyatta Brown, African-American, made a claim against DeShazo, alleging that he was subjected to a racially hostile work environment while working for Deshazo and that he was wrongfully terminated in 2015 and

discriminated against when DeShazo failed to recall him when it recalled similarly situated Caucasian employees.  Defendant DeShazo settled Brown's claims against it.   However, Defendant took no steps to correct or prevent further racial discrimination.

45.   DeShazo was on notice of the racial discrimination at DeShazo. DeShazo was on notice of the members of Caucasian management and, especially, Tucker's, racial discrimination and racial harassment of African-American employees and the retaliation against the African-Americans for complaining of racial discrimination and racial harassment.   Despite actual notice of racial discrimination, racial harassment and retaliation, DeShazo condoned and tolerated it.  DeShazo and Tucker have been previously sued in the Northern District of Alabama for similar complaints by African-American employees going back to as early as 2001 and as most recently as 2016 and 2017, yet DeShazo failed to take steps to prevent Tucker and other Caucasian employees and Caucasian members of management from continuing to discriminate or harass African-American employees or to remedy the workplace from racial slurs, harassment and discrimination and racial symbols and signage.  Individuals who also experienced racial discrimination, racial harassment or retaliation for objecting to racial discrimination or racial harassment include, but are not limited to, former DeShazo

employees Dan Sims, Jason Houser, Anthony Bradford, Clyde Yarbrough, Anton Batron and Casey Oliver.

## V.  STATEMENT OF PLAINTIFF'S CLAIMS

### A.   COUNT ONE– TITLE VII AND §1981–HOSTILE WORKING ENVIRONMENT AGAINST DESHAZO CRANE

46.    Plaintiff adopts and realleges paragraphs one (1) through fifteen (15), seventeen (17) through thirty-one (31), thirty-three (33), thirty-five (35) through forty-five (45) as if fully set forth herein.

47.    During the entirety of his employment, Plaintiff heard members of management, including Chuck Tucker, Caucasian Vice President of Manufacturing and Elzie Green, Caucasian Supervisor in the Welding Department use the word "nigger" on a regular basis.  Tucker and Mr. Green also told racist jokes and talked down to African-Americans.  Plaintiff was subjected to racial slurs, racially derogatory jokes and racially derogatory comments, racial symbols, racially offensive and threatening graffiti and discipline, assignments and intimidation based on race on a regular basis.

48.    From 2014 until approximately May 2016, when another African American employee of DeShazo, Michael Kennedy, sued DeShazo and Chuck Tucker for race discrimination, race harassment and retaliation, there was racist graffiti on the walls of the men's restrooms at DeShazo.  The graffiti included a

drawing of a tree with a noose hanging from it and racist epithets including the word "nigger" written on the wall.  Plaintiff saw the graffiti on the restroom walls at DeShazo from the time his employment began in 2014 and it remained here until approximately May 2016.  Magazines and joke books with racist images were in the bathroom at the Alabaster plant from 2014 until 2016 after Michael Kennedy filed his Complaint.

49.   Caucasian employees and members of management at DeShazo routinely made derogatory racist statements.  Dave Wheeler, Caucasian Quality Control Manager, stated "we just need to go back to hanging them" in reference to African-Americans.  He said "when they see the eyes pop out and the bowels move all over them, they won't do that stuff anymore," again referring to African-Americans.

50.   Another Caucasian employee at DeShazo, Roger Vanderslice, regularly used the word "nigger" at DeShazo.  Once, Plaintiff heard Mr. Vanderslice say "coon pecker make a nigger run straight."

51.   Elzie Green, Caucasian, Fabrication Supervisor who was supervised by Chuck Tucker, made a racially derogatory Facebook post on April 28, 2015.  Green showed the post to others at work.  The post was about the Baltimore, Maryland race riots after the death of Freddy Gray.  Green posted that "[i]f they start shooting them mf in Baltimore, they will stop all that stuff... ."  It also said

"cut there (sic) checks out for food stamps thanks Obama."  In the top left corner of the post was a picture of a man aiming a rifle or shotgun.  When Human Resources at DeShazo became aware of the post, it failed to act other than telling Green to remove the post.  Green was not disciplined by DeShazo or Tucker.

52.     In April 2015, DeShazo hired Jeff Stapleton, Caucasian, as Paint Supervisor, the same position held by Michael Kennedy, African-American, who was Plaintiff's supervisor.  Tucker told Mr. Stapleton that he was to "get rid of them Blacks."  Mr. Stapleton objected to this instruction and was terminated.

53.     Charles (lnu), Caucasian, brought a Facebook screen shot of an AK47 gun, painted with a Confederate flag, to work.

54.     Plaintiff observed a Caucasian employee, Casey Childers, wearing a Hard hat at work at DeShazo with a racist emblem written on it in permanent marker.

55.     In April 2016, DeShazo hired a new supervisor for the Paint Department, Anthony Bradford, African-American.  Mr. Bradford told Plaintiff that DeShazo told him that he was hired to get rid of the African-American employees.  Mr. Bradford refused to do so and was fired.

56.     Employees had Confederate flag stickers on their vehicles parked on company property and wore t-shirts with Confederate flags on them in the workplace.  On May 27, 2016, Plaintiff saw a large Confederate flag hanging from

24

the front bumper of a vehicle in DeShazo's parking lot in clear view of all employees.  Plaintiff tried to complain to Human Resources but no one was in the office that day.

57.    When Plaintiff complained about employees wearing Confederate flag symbols in the workplace, Nick Vincent, Caucasian Manager of Human Resources, told Plaintiff he could not do anything about Confederate flags on employees' clothing or hardhats because the flags were "on private property" yet they were worn in the workplace.

58.    Prior to Plaintiff making a complaint of race discrimination on May 27, 2016, Chuck Tucker, Caucasian Vice President of Manufacturing, had always refused to shake Plaintiff's hand.

59.    On June 10, 2016, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation.

60.    On August 3, 2016, fifty-four (54) days after filing his Charge of Discrimination with the EEOC, Tucker told Plaintiff he had to submit to a drug test because an unnamed co-employee reported that Plaintiff was "high" at work.  Other than the routine drug test administered to every new hire, Plaintiff had not been required to submit to a drug test during the two-plus years of his employment with

DeShazo until August 3, 2016, less than two (2) months after complaining of race discrimination and retaliation.

61.     Plaintiff submitted to the drug test and was told he could not return to work until the results of the drug test came back.  On August 10, 2016, Plaintiff was told the results of the drug test – the results were negative for drugs in Plaintiff's system.  Despite the negative drug test results, Tucker wrote Plaintiff up on August 11, 2016 for being "impaired" at work on August 3, 2016.  The write-up was a final written warning.   Although the warning stated that the drug test results were negative, Plaintiff was written up anyway.  Plaintiff refused to sign the write-up.

62.     On the other hand, when Caucasian employees went to work at DeShazo while obviously impaired due to drugs or alcohol, they were either never tested or were not disciplined even if they had a positive drug/alcohol test.  For instance, Bubba Wooley, Caucasian, worked on the night shift.  He came to work one night so impaired that he was crawling because he could not walk and he could not hold a conversation.  Mr. Wooley passed out in a chair and the night foreman called Chuck Tucker.  Tucker came to the workplace and told Mr. Wooley to get his tools and report to the first shift with him.  Mr. Wooley was not tested for drugs nor was he disciplined in any way.  Mr. Wooley, Caucasian, who had never filed a claim of discrimination against DeShazo/Chuck Tucker, was not disciplined and, in fact, was not even tested.  Plaintiff, African-American, who had filed a claim of

26

discrimination, was tested – and tested negative – and was nonetheless placed on a final written warning.

63.     Ben Eatres, Caucasian, is an employee of DeShazo.  In approximately July, 2016, he was reported to be "high" at work. Mr. Eatres tested positive for two drugs – Buprenorphine (a narcotic) and Benzodiazepines (tranquilizers).  Defendants claim he had a prescription for the drugs.  Mr. Eatres was only given a verbal warning, the minimum discipline under DeShazo policy, for testing positive for the two drugs.  Mr. Eatres had never complained of discrimination at DeShazo and had not engaged in protected activity.

64.     During Plaintiff's employment, the only training he ever received related to safety matters.  No training was ever conducted on EEO matters.

65.     DeShazo was on notice of the racial discrimination at DeShazo. DeShazo was on notice of the members of Caucasian management and, especially, Tucker's, racial harassment of African-American employees and the retaliation against the African-Americans for complaining of racial discrimination and racial harassment.  Despite actual notice of racial discrimination, racial harassment and retaliation, DeShazo tolerated it.  DeShazo and Tucker have been previously sued in the Northern District of Alabama for similar complaints by African-American employees going back to as early as 2001 and as most recently as 2016 and 2017, yet DeShazo failed to take steps to prevent Tucker and other Caucasian employees

and Caucasian members of management from continuing to discriminate or harass African-American employees or to remedy the workplace from racial slurs, harassment and discrimination and racial symbols and signage.

66.    Plaintiff avers, based on the facts set forth herein, that while he was employed by DeShazo Crane, he was subjected to and a severe and pervasive racially hostile work environment because of his race, African-American.

67.    Plaintiff avers that DeShazo condoned and tolerated the racial harassment and racially hostile work environment of which it was put on notice years prior to Plaintiff's employment with DeShazo and after Plaintiff's complaints to management and to the EEOC, in violation of Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C.§1981, as amended.

68.    Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit compensatory damages, punitive damages, attorney's fees, injunctive relief and declaratory relief is his only means of securing adequate relief.

69.    Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

70.    DeShazo acted with malice and/or reckless indifference towards the Plaintiff.

71.     Plaintiff has satisfied all administrative prerequisites to bring this action.

### B.  COUNT TWO–§1981–HOSTILE WORKING ENVIRONMENT AGAINST CHUCK TUCKER

72.     Plaintiff adopts and realleges paragraphs one (1) through fifteen (15), paragraphs seventeen (17) through twenty-one (21), paragraphs twenty-four (24) through twenty-nine (29) and paragraphs thirty-one (31) through forty-five (45) as if fully set forth herein.

73.     From the time Plaintiff began his employment with DeShazo, he has heard the word "nigger" used repeatedly at DeShazo.

74.     During the entirety of his employment with DeShazo Crane from 2004 to 2017, Plaintiff was subjected to racial slurs, racially derogatory jokes and racially derogatory comments, racial symbols, racially offensive and threatening graffiti. Further, he was subjected to discriminatory and retaliatory discipline and assignments and subjected to intimidation based on race on a regular basis.

75.     During the entirety of his employment, Plaintiff heard members of management, including Chuck Tucker, Caucasian Vice President of Manufacturing and Elzie Green, Caucasian Supervisor in the Welding Department use the word "nigger" on a regular basis.  Tucker and Mr. Green also told racist jokes and talked down to African-Americans.

76.     One specific example of racially threatening graffiti was the

drawings on the wall of the men's restrooms at DeShazo.  The graffiti included a

drawing of a tree with a noose hanging from it and racist epithets, including the

word "nigger" written on the wall.  Plaintiff saw the graffiti on the restroom

walls at DeShazo from the time his employment began in 2014 and it remained

here until approximately May 2016, shortly after another African-American

employee of DeShazo, Michael Kennedy, filed a lawsuit against DeShazo and

Chuck Tucker, the same Defendants in Plaintiff's case, for race discrimination, race

harassment and retaliation.  Magazines and joke books with racist images were in

the bathroom at the Alabaster plant from 2014 until 2016 after Michael Kennedy

filed his Complaint.

77.     Elzie Green, Caucasian, Fabrication Supervisor who was supervised

by Chuck Tucker, made a racially derogatory Facebook post on April 28, 2015.

Green showed the post to others at work.  The post was about the Baltimore,

Maryland race riots after the death of Freddy Gray.  Green posted that "[i]f they

start shooting them mf in Baltimore, they will stop all that stuff... . "  It also said

"cut there (sic) checks out for food stamps thanks Obama."  In the top left corner of

the post was a picture of a man aiming a rifle or shotgun.  When Human Resources

at DeShazo became aware of the post, it failed to act other than telling Green to

remove the post.

78.     In April 2015, DeShazo hired Jeff Stapleton, Caucasian, as Paint

Supervisor, the same position held by Michael Kennedy, African-American, who was Plaintiff's supervisor.  Tucker told Mr. Stapleton that he was to "get rid of them Blacks."  Mr. Stapleton objected to this instruction and was terminated.

79.    Charles (lnu), Caucasian, brought a Facebook screen shot of an AK47 gun, painted with a Confederate flag, to work.

80.    Plaintiff observed a Caucasian employee, Casey Childers, wearing a Hard hat at work at DeShazo with a racist emblem on it in permanent marker.

81.    In April 2016, DeShazo hired a new supervisor, Anthony Bradford, African-American.  Mr. Bradford told Plaintiff that DeShazo told him that he was hired to get rid of the African-American employees.  Mr. Bradford refused to do so and was fired.

82.    Employees had Confederate flag stickers on their vehicles parked on company property and wore t-shirts with Confederate flags on them in the workplace.  On May 27, 2016, Plaintiff saw a Confederate flag hung from the front bumper of a vehicle in DeShazo's parking lot.  Plaintiff tried to complain to Human Resources but no one was in the office that day.

83.    Prior to Plaintiff making a complaint of race discrimination on May 27, 2016, Chuck Tucker, Caucasian Vice President of Manufacturing, had always refused to shake Plaintiff's hand.  However, the day after Plaintiff made the complaint of discrimination, Tucker shook Plaintiff's hand.

84.    On June 10, 2016, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation.

85.    On August 3, 2016, fifty-four (54) days after filing his Charge of Discrimination with the EEOC, Tucker told Plaintiff he had to submit to a drug test because an unnamed co-employee reported that Plaintiff was "high" at work.  Other than the routine drug test administered to every new hire, Plaintiff had not been required to submit to a drug test during the two-plus years of his employment with DeShazo until August 3, 2016, less than two (2) months after complaining of race discrimination and retaliation.

86.    Plaintiff submitted to the drug test and was told he could not return to work until the results of the drug test came back.  On August 10, 2016, Plaintiff was told the results of the drug test – the results were negative for drugs in Plaintiff's system.

87.    Despite the negative drug test results, Tucker issued Plaintiff a final written warning on August 11, 2016 for being "impaired" at work on August 3, 2016. The write-up was a final written warning.  Although it stated that the drug test results were negative, Plaintiff was written up anyway.  Plaintiff refused to sign the write-up.

88.    On the other hand, when Caucasian employees went to work at DeShazo while obviously impaired due to drugs or alcohol, they were either never tested or were not disciplined even if they had a positive drug/alcohol test.   For instance, Bubba Wooley, Caucasian, worked on the night shift.   He came to work one night so impaired that he was crawling because he could not walk and he could not hold a conversation.   Mr. Wooley passed out in a chair and the night foreman called Chuck Tucker.   Tucker came to the workplace and told Mr. Wooley to get his tools and report to the first shift with him.   Mr. Wooley was not tested for drugs nor was he disciplined in any way.   Mr. Wooley, Caucasian, who had never filed a claim of discrimination against DeShazo/Chuck Tucker, was not disciplined and, in fact, was not even tested.    Plaintiff, African-American, who had filed a claim of discrimination, was tested – and tested negative – and was nonetheless disciplined.

89.    Ben Eatres, Caucasian, is an employee of DeShazo.   In approximately July, 2016, he was reported to be "high" at work.   Mr. Eatres tested positive for two drugs – Buprenorphine (a narcotic) and Benzodiazepines (tranquilizers).   Defendants claimed he had a prescription.   Eatres was only given a verbal warning, the minimum discipline under DeShazo policy, for testing positive for the two drugs.   Mr. Eatres had never complained of discrimination at DeShazo and had not engaged in protected activity.

90.    During Plaintiff's employment, the only training he ever received related to safety matters.  No training was ever conducted on EEO matters.

91.    DeShazo was on notice of the racial discrimination at DeShazo. DeShazo was on notice of the members of Caucasian management and, especially, Tucker's, racial harassment of African-American employees and the retaliation against the African-Americans for complaining of racial discrimination and racial harassment.  Despite actual notice of racial discrimination, racial harassment and retaliation, DeShazo condoned and tolerated it.  DeShazo and Tucker have been previously sued in the Northern District of Alabama for similar complaints by African-American employees going back to as early as 2001 and as most recently as 2016 and 2017, yet DeShazo failed to take steps to prevent Tucker and other Caucasian employees and Caucasian members of management from continuing to discriminate or harass African-American employees or to remedy the workplace from racial slurs, harassment and discrimination and racial symbols and signage.

92.    Tucker exposed Plaintiff to a racially hostile working environment by exposing him to racial language and by treating him differently and worse than similarly situated, Caucasian supervisors.

93.    Plaintiff avers, based on the facts set forth herein, that while he was employed by DeShazo Crane, Tucker subjected him to a severe and pervasive racially hostile work environment because of his race, African-American.

94.     Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit compensatory damages, punitive damages, attorney's fees, injunctive relief and declaratory relief is his only means of securing adequate relief.

95.     Tucker acted with malice and/or reckless indifference towards the Plaintiff.

### C.  COUNT THREE–TITLE VII AND §1981–DISPARATE PAY CLAIM AGAINST DESHAZO CRANE

96.     Plaintiff adopts and realleges paragraphs one (1) through sixteen (16) as if fully set forth herein.

97.     Although Plaintiff is a certified welder, Caucasian welders who are not certified were paid more than Plaintiff.

98.     When Plaintiff complained of disparate pay based on race or asked for a raise, DeShazo would move him to the Paint Department and/or DeShazo/Tucker would issue Plaintiff disciplinary actions used as a reason to not give Plaintiff a raise.  Welding is the preferred job over painting.  African-American employee Fernando James is another welder who was sent to the Paint Department when things were slow in the Welding Department while less qualified Caucasians in the Welding Department were not sent to the Paint Department.

99.     Caucasian, similarly situated employees were paid more than Plaintiff for performing the duties Plaintiff performed.

100.   There is no legitimate reason for the difference in pay Plaintiff received, earning less than similarly situated, Caucasian employees.

101.   Plaintiff avers, based on the facts set forth herein, that while he was employed by DeShazo Crane, he was subjected to different terms and conditions of employment through disparate pay because of his race, African-American.

102.   Plaintiff avers that DeShazo condoned and tolerated the disparate pay of Caucasian and African-American employees, including Plaintiff, in violation of Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C.§1981, as amended.

103.   Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit compensatory damages, punitive damages, attorney's fees, injunctive relief and declaratory relief is his only means of securing adequate relief.

104.   Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

105.   Plaintiff has satisfied all administrative prerequisites to bring this action.

106.   DeShazo acted with malice and/or reckless indifference towards the Plaintiff.

### D. COUNT FOUR–TITLE VII AND §1981–RETALIATIORY HOSTILE WORKING ENVIRONMENT AGAINST DESHAZO CRANE

107. Plaintiff adopts and realleges paragraphs one (1) through fifteen (15), paragraphs thirty (30) through thirty-seven (37) and paragraphs thirty-nine (39) through forty-five (45) as if fully set forth herein.

108. After Plaintiff made internal complaints of race discrimination and filed his EEOC charge against DeShazo Crane on June 10, 2016, Plaintiff was exposed to a retaliatory hostile environment.

109. Fifty-four (54) days after his EEOC charge was filed, Tucker told Plaintiff he had to submit to a drug test because an unnamed co-employee reported that Plaintiff was "high" at work. On August 3, 2016, Plaintiff was required to submit to a drug test for the first time in his two-plus years of employment.

110. Plaintiff's drug test results were negative. Tucker issued Plaintiff a final written warning. On August 11, 2016, Tucker wrote Plaintiff up for being "impaired" at work on August 3, 2016 even though the drug test results showed that was not true. Notwithstanding the results of the drug test, the warning was a final, written warning for impairment in the workplace.

111. On the other hand, Caucasian employees who had not complained of discrimination or engaged in protected activity came to work while obviously impaired and those employees were either never tested or were never disciplined even if they had positive drug/alcohol test results.

37

112.   Bubba Wooley, Caucasian, came to work one night at DeShazo so impaired that he could not walk or hold a conversation.  He passed out in a chair while at work.  The night foreman called Tucker.  Instead of requiring him to submit to a drug/alcohol test and/or disciplining him, Tucker told him to get his tools and report to first shift with Tucker.  Mr. Wooley had not complained of discrimination or engaged in any protected activity.

113.   Another Caucasian employee, Ben Eatres, was reported to be "high" at work in July 2016.  Mr. Eatres tested positive for two drugs – Buprenorphine (a narcotic) and Benzodiazepines (tranquilizers).  Mr. Eatres was only given a verbal warning, the minimum discipline under DeShazo policy, for testing positive for the two drugs.  Mr. Eatres had never complained of discrimination at DeShazo and had not engaged in protected activity.

114.   Plaintiff had complained of race discrimination and harassment and Defendant had notice of his two EEOC charges.  Despite this notice and specific complaints, DeShazo took no steps to remedy Tucker's and others' harassment of Plaintiff based on his race or to ensure compliance with the statutes.

115.   DeShazo condoned the retaliatory hostile working environment to which Plaintiff was exposed in violation of Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C.§1981, as amended.

116.   Plaintiff has no plain, adequate or complete remedy at law to redress

38

the wrongs alleged herein and this suit compensatory damages, punitive damages, attorney's fees, injunctive relief and declaratory relief is his only means of securing adequate relief.

117. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

118. Plaintiff has satisfied all administrative prerequisites to bring this action.

119. DeShazo acted with malice and/or reckless indifference towards the Plaintiff.

### E. COUNT FIVE– §1981–RETALIATIORY HOSTILE WORKING ENVIRONMENT AGAINST CHUCK TUCKER

120. Plaintiff adopts and realleges paragraphs one (1) through fifteen (15), paragraphs thirty (30) through thirty-three (33) and paragraph forty-five (45) as if fully set forth herein.

121. After Plaintiff made internal complaints of race discrimination and filed his EEOC charges against DeShazo Crane on June 10, 2016, Plaintiff was exposed to a retaliatory hostile environment.

122. Fifty-four (54) days after his first EEOC charge was filed, Tucker told Plaintiff he had to submit to a drug test because an unnamed co-employee reported that Plaintiff was "high" at work.  On August 3, 2016, Plaintiff was required to

39

submit to a drug test for the first time in his two-plus years of employment.

123.   Plaintiff's drug test results were negative. Tucker issued Plaintiff a final written warning.  On August 11, 2016, Tucker wrote Plaintiff up for being "impaired" at work on August 3, 2016 even though the drug test results showed that was not true.  Notwithstanding the results of the drug test, Tucker issued Plaintiff a final, written warning for impairment in the workplace.

124.   Plaintiff had complained of race discrimination and harassment and Defendant had notice of his EEOC charge.  Despite this notice and specific complaints, Tucker condoned and did not stop his harassment of Plaintiff based on his race nor did he comply with the statutes.  Tucker exposed Plaintiff to a retaliatory hostile working environment in violation of Title VII of the Civil Rights Act of 1964, as amended, and in violation of 42 U.S.C. §1981.

125.   Tucker created and condoned the retaliatory hostile working environment to which Plaintiff was exposed in violation of Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C.§1981, as amended.

126.   Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit compensatory damages, punitive damages, attorney's fees, injunctive relief and declaratory relief is his only means of securing adequate relief.

127.   Plaintiff is now suffering and will continue to suffer irreparable injury

from Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

128.   Plaintiff has satisfied all administrative prerequisites to bring this action.

129.   Tucker acted with malice and/or reckless indifference towards the Plaintiff.

### F.   COUNT FIVE - PATTERN AND PRACTICE OF RACIAL DISCRIMINATION, HARASSMENT AND RETALIATION AGAINST DESHAZO AND CHUCK TUCKER

130.   Plaintiff adopts and realleges paragraphs one (1) through fifteen (15) and paragraphs twenty-one (21), twenty-five (25) and paragraphs forty (40) through forty-five (45) as if fully set forth herein.

131.   Defendants engaged in a pattern and practice of racial discrimination, racial harassment and retaliation. Defendants have a history of racial discrimination, racial harassment and retaliation yet they have taken no action to correct or prevent further racial discrimination, racial harassment and retaliation.

132.   In 2001, Defendants were sued by Columbus Pruitt and Tony Rose, African-Americans, (United States District Court for the Northern District of Alabama, Southern Division, CV-01-PWG-2649-S) for employment discrimination based on race and for outrage, assault and battery and negligent retention. Specifically, Plaintiffs claimed they "were continuously subjected to the use of racial

slurs and epithets, including the use of the word 'nigger.'  The harassment also

consisted of the use of racially offensive jokes, including employees reading from a

book containing racially offensive jokes, including employees reading from a book

containing racially offensive jokes, and making comments about the Ku Klux Klan."

Plaintiffs further complained they "were subjected to racially offensive symbols,

including confederate flags prominently displayed in the workplace.  The bathroom

walls were used by employees to write derogatory and racially offensive comments

and drawings about the plaintiffs and/or their race."  Plaintiffs claimed that

"[s]upervisory and management employees were aware of and participated in the

racial harassment" and that "[a]lthough the plaintiffs complained to management

about the harassment, the company took no action to discourage or prevent the illegal

activity."  Plaintiff Rose claimed that "[t]he harassment also included physical

assault and intimidation" as he "was physically pushed and kicked by [an]

employee."   Plaintiff Rose claimed Defendant Tucker was informed of the assault

on Rose and took no corrective action.  Plaintiff Rose claimed that he "was forced

to resign his employment due to the continued pervasive racial harassment and

danger to his personal safety."  The complaint claims that after Plaintiff Rose left his

employment with Defendant DeShazo, Plaintiff "Pruitt became the only African-

American employee in the electric shop, and the harassment increased."  Plaintiff

Pruitt claimed that "[o]n one occasion, Pruitt discovered that other employees had

42

tampered with his lunch, including, contaminating his food with a liquid substance that appeared to be urine."  Plaintiff Pruitt claimed that he complained to Defendant Tucker but no action was taken in response to his complaints.  Plaintiff Pruitt claimed Defendant "Tucker was a participant in the racially harassing behavior" and that "[b]ecause the working environment was intolerable, Pruitt was forced to resign his employment… ."  .  Despite this lawsuit and

settlement, Defendants took no steps to correct or prevent further racial discrimination, racial harassment and retaliation.  Although Defendants train the employees on many matters, Defendants provided no training on EEO matters.

133.   On April 29, 2016, Defendant DeShazo was sued by Corey Wilson, African-American (United States District Court for the Northern District of Alabama, Southern Division, 2:16-cv-00705-RDP) for employment discrimination based on race, including claims that DeShazo subjected African-American employees to a racially hostile work environment and discriminated based on race in relation to pay.  . Despite this lawsuit, Defendant

took no steps to correct or prevent further racial discrimination, racial harassment and retaliation.  In 2017, Mr. Wilson filed a new Charge of Discrimination with the EEOC against Defendant DeShazo alleging race discrimination and retaliation.

134.   On May 6, 2016, Michael Kennedy, African-American filed suit against Defendants DeShazo and Tucker (United States District Court for the

43

Northern District of Alabama, Southern Division, 2:16-cv-00741-RDP) for

employment discrimination, including claims that Defendants subjected to a hostile

work environment and a retaliatory hostile work environment; discriminated against

African-Americans in relation to pay; that Defendants constructively discharged

him; that Defendants' conduct was outrageous; and that Defendant DeShazo

negligently or wantonly supervised, trained and retained employees.  Specifically,

Kennedy claimed that "during the entirety of his employment with DeShazo

Crane from 2008 to 2016, [he] was subjected to racial slurs, racially derogatory jokes

and racially derogatory comments, racial symbols, racially offensive and threatening

graffiti, discipline, assignments and intimidation on a regular basis" and that in 2013,

"Don Vining, Caucasian, Plant Foreman in Bessemer, made the statement that it was

'just like a nigger to steal.'"  Kennedy claimed that "employees had

Confederate flag stickers on their vehicles parked on company property and wore t-

shirts with Confederate flags on them in the workplace" and that he "observed a

Caucasian employee, 'K.C.' (lnu) wearing a hard hat with 'KKK' written on it in

permanent marker."  Kennedy claimed that "[r]acially threatening graffiti

was on the bathroom walls at the Alabaster location for DeShazo, including the word

"nigger" being written on the wall and a drawing of a tree with a noose hanging

down drawn on the wall" and that "[m]agazines and joke books with racist images

were in the bathroom at the Alabaster plant."  On May 14, 2015, Kennedy

filed a Charge of Discrimination with the EEOC.  Kennedy claimed that

"[w]ithin a couple of weeks after [he] filed his EEOC charge, a dead rat was left in

[his] locker at DeShazo's work site" and that he was further retaliated against

through retaliatory work assignments and retaliatory discipline.  Defendants settled

this lawsuit. Despite this lawsuit, Defendants took no steps to correct or prevent

further racial discrimination, racial harassment or retaliation other than removing the

racially threatening graffiti from the bathroom walls.

135.   On May 26, 2016, Defendant DeShazo was sued by Cornelius Harris,

African-American, (United States District Court for the Northern District of

Alabama, Southern Division, 2:16-cv-00867-LSC) for, among other things, racial

discrimination.  . Despite this lawsuit, Defendant took no steps to correct or prevent

further racial discrimination.

136.   On August 19, 2016, Desi Fomby, African-American, filed a Charge of

Discrimination against Defendant DeShazo alleging race discrimination and

retaliation.  Fomby claimed that DeShazo/Chuck Tucker required him to submit to

a drug test on August 3, 2016 and the result of the drug test was negative.  Despite

the negative test result from the drug test, Fomby was disciplined on August 11,

2016 for substance abuse impairment on the job.  The Disciplinary Written Warning

issued said that Fomby tested negative for drugs.  Fomby was fired from DeShazo

for substance abuse impairment on the job.  Fomby claimed that since he first began

working for DeShazo, he had heard the word "nigger" used repeatedly at DeShazo. Further, he had been asked "what are you going to eat for lunch? Watermelon? Chicken?"  Fomby claimed that Chuck Tucker took him to go to lunch in early August 2016 for the first time and he asked Fomby if he was going to order chicken. Fomby claimed that when David Wheeler (Caucasian) was acting Human Resources Director, talked about the election of President Obama.  According to Fomby, Wheeler said "we needed to go back to hanging people and put it on live TV" while talking about "hanging drug dealers and gang bangers" and was referring to African-Americans.  Fomby claimed that Anthony Bradford (African-American), Paint Supervisor, told Fomby that he (Bradford) was hired to fire the Blacks per Chuck Tucker's orders and that when he didn't do that, he was fired.  Fomby claimed that Jeff Stapleton (Caucasian), Paint Supervisor at DeShazo before Bradford, told Fomby that Tucker had hired him to get rid of the Blacks.  When he didn't do so, he was fired.  Fomby claimed that Tucker once called him "stupid" and always spoke to him with no respect – that Tucker talked down to him and tried to set him up to fail.  Fomby claimed that when he was in a supervisory position, he was excluded from the supervisors' meetings.  Fomby took FMLA leave in 2015 when his son had to have surgery.  The leave was unpaid.  Fomby claimed that Caucasians who had to take leave were allowed to have other employees donate leave so that their FMLA would be paid but that he was not allowed to accept leave from others.  Fomby

46

claimed that Roger Vanderslice (Caucasian) and Ben Eatres (Caucasian) each took leave but were paid as a result of donated leave. Fomby claimed that he saw Confederate flags, people wearing t-shirts and bandanas with Confederate flags and tool boxes with Confederate flag stickers on them while at DeShazo, that he saw a Confederate flag on a DeShazo company truck and that Casey Childress (Caucasian) wore a hardhat that had "KKK" written on it. Fomby claimed that he saw racist graffiti drawn on the wall in a stall in the bathroom and a drawing of a noose and a head with the tongue hanging out. Fomby claimed that he had never been trained on EEO matters – the only training he received was related to safety. On September 9, 2016, Fomby filed a second Charge of Discrimination against DeShazo with the EEOC alleging further race discrimination and retaliation. Defendant DeShazo settled Fomby's claims against it. However, Defendant took no steps to correct or prevent further racial discrimination.

137. On August 19, 2016, Keeland Turner, African-American, filed a Charge of Discrimination against Defendant DeShazo alleging race discrimination and retaliation. Turner claimed that he was subjected to disparate pay at DeShazo based on his race. Turner complained to the Paint Supervisor that he thought the pay disparity was racist. Shortly after making his complaint of race discrimination, Turner was terminated. Turner claimed that Defendant Tucker talked down to the African-Americans on the Paint crew and belittled them and that they were given no

respect from Tucker. Turner claimed that he saw a Confederate flag on a motorcycle and on a truck parked in the DeShazo company parking lot.  While working at DeShazo, Turner claimed that he learned that David Wheeler (Caucasian) Quality Control Supervisor said to bring back nooses and broadcast it on live TV and that would stop these Blacks from all their killing and raping.  Turner was never trained on any EEO policies while working for DeShazo. Defendant DeShazo settled Turner's claims against it.  However, Defendant took no steps to correct or prevent further racial discrimination.

138.  In 2016, Kenyatta Brown, African-American, made a claim against DeShazo, alleging that he was subjected to a racially hostile work environment while working for Deshazo and that he was wrongfully terminated in 2015 and discriminated against when DeShazo failed to recall him when it recalled similarly situated Caucasian employees.  Defendant DeShazo settled Brown's claims against it.  However, Defendant took no steps to correct or prevent further racial discrimination.

139.  On April 28, 2017, Jeff Stapleton, Caucasian, filed a lawsuit against Defendants DeShazo and Tucker (United States District Court for the Northern District of Alabama, Southern Division, 2:17-cv-00692-JEO).  Stapleton accuses Defendants of racial discrimination, racial harassment, retaliation, assault, false imprisonment, outrageous conduct, negligent retention, negligent training and

negligent supervision. Specifically, Stapleton was being interviewed by Defendant Tucker to work at DeShazo to replace Mike Kennedy, African-American male, the current Paint Supervisor. Defendant Tucker stated that Mr. Kennedy had "'sucked me (Defendant Tucker) right in' by hiring African-Americans to work on Mr. Kennedy's crew and that they had to go." In reference to Mr. Kennedy's African-American crew members, Stapleton claims Defendant Tucker said they were "worthless, stupid, unclean, unable to follow directions and were illiterate." Stapleton claims Defendant Tucker said that "the African-American crew members would shake their heads like little monkeys when they were told they were doing something wrong." Stapleton claims that he witnessed Defendant Tucker stating "you see how stupid these niggers are?" when Defendant Tucker saw Desi Fomby using a siphon incorrectly. Stapleton claims Defendant Tucker showed Stapleton a crane that Tucker said the Paint crew had messed up by placing a decal in the wrong place. Defendant Tucker called Elzie Green, Caucasian Fabrication Supervisor, over the radio and told him to bring the blueprint for the crane because the "niggers fucked up." In the meantime, Dave Wheeler, Caucasian Quality Control Supervisor, and Don Vining walked up. Mr. Wheeler said the placement of the decal was actually correct. Defendant Tucker then called Elzie Green back over the radio where he could be heard by everyone with a radio, including Mr. Kennedy, and said those "niggers" didn't mess up as bad as he had thought. Stapleton claims Defendant

49

Tucker met with him privately in Tucker's office.  Once inside Tucker's office, Defendant Tucker told Stapleton he wanted Stapleton "to get rid of them Blacks." When Stapleton asked exactly who he was supposed to "get rid of," Defendant Tucker said that he wanted all the "niggers" out of DeShazo.   While working at DeShazo, Stapleton claims he ran into Nick Vincent, Caucasian Human Resources Manager.  Stapleton asked Vincent about EEO training at DeShazo and Vincent confirmed that there was no EEO training.  After starting work at DeShazo, Stapleton did not terminate the African-American employees.  As a result, Stapleton claims that Elzie Green warned Stapleton that he was supposed to do things "the DeShazo way."  Stapleton claims Green intentionally sabotaged the work of the Paint crew to the point that Stapleton had the crew move the jobs around to avoid the sabotage. Stapleton confronted Green and Don Vining about the sabotage and they both laughed and said that Stapleton didn't get it - that when Stapleton started doing what Defendant Tucker told him to do - getting rid of those "niggers" - then maybe his job might last and his life would be easy at DeShazo.  Stapleton claims Green also taunted Stapleton by saying that he needed to get rid of all the "niggers."  Green tried to force Stapleton to write up the African-Americans for mistakes they did not make. Stapleton claims that when he refused to do so, Green said that funny things happen when people don't do what they are told to do.  Shortly thereafter, Stapleton noticed that someone had gone through his truck which was parked in the company parking

50

lot. While at DeShazo, Stapleton claims he saw an employee wearing a hard hat with "KKK" written on it and Stapleton confronted him.  The employee told Stapleton that if he had a problem with his hard hat, he (Stapleton) would not last long at DeShazo.  Stapleton also saw Confederate flags on DeShazo property.  During the second week of his employment with DeShazo, Stapleton claims Elzie Green told Stapleton about something that he (Green) had posted on Facebook.  This was during the time of the Baltimore race riots after the death of Freddie Gray.  Green asked if Stapleton had heard about what was going on in Baltimore and said that same thing could happen "here" if Stapleton didn't do something about it.  Green then showed Stapleton the Facebook posting on his cell phone.  It said "[i]f they start shooting them mf in Baltimore, they will stop all that stuff."  It also said "cut there (sic) checks out for food stamps thanks Obama."  There was a picture of a man holding a gun in the corner of the post.  Green then said that "we" (Caucasians) need to start shooting "them" in the head and hanging "them" (African-Americans) and that maybe he (Green) ought to start it.  When Stapleton told Green his Facebook post was wrong, Green responded by asking if Stapleton was worried that he would shoot Stapleton's "little black buddies."  Stapleton claims he immediately went to report Green's Facebook posting.  Stapleton first went to Cindy Jones, Caucasian female Project Manager, and told her about the post.  Ms. Jones pulled up the Facebook posting and saw it for herself.  Ms. Jones then told Nick Vincent, Caucasian Human Resources

Manager, about the post and he just laughed and said that he would handle it. Both Ms. Jones and Mr. Vincent told Stapleton that his report would be kept confidential.

On May 8, 2015, Stapleton's last day of work at DeShazo, Stapleton claims Green called him over the radio to come to his office. When Stapleton got to Green's office, Don Vining, Caucasian Plant Manager, was in the office with Green. They gathered close to Stapleton, surrounding him. Green physically removed Stapleton's hard hat from his head and Mr. Vining blocked the door so that Stapleton could not exit. It was only after Stapleton threatened to call 911 that he was allowed to leave. Stapleton placed a call to Defendant Tucker, his supervisor, and also sent him text messages asking him to call Stapleton about what had transpired that day at DeShazo. Instead of getting a call from Defendant Tucker, Stapleton received a call later that day informing him that his services were no longer needed at DeShazo.

140. Other individuals who also experienced racial discrimination, racial harassment or retaliation for objecting to racial discrimination or racial harassment include, but are not limited to, former DeShazo employees Dan Sims, Jason Houser, Anthony Bradford, Clyde Yarbrough, Anton Batron and Casey Oliver.

## G.   COUNT SIX - OUTRAGE CLAIM AGAINST DESHAZO CRANE

141. Plaintiff adopts and realleges paragraphs one (1) through fifteen (15) and paragraphs seventeen (17) through forty-five (45) as if fully set forth herein.

142. This claim arises under the law of the State of Alabama to redress

DeShazo's outrageous conduct towards Plaintiff and DeShazo's ratification of the conduct set forth in this Complaint.

143.    This claim is being brought against DeShazo for its knowing ratification of the actions of its employees, supervisors, and management.

144.    DeShazo outrageously and intentionally inflicted emotional distress upon Plaintiff by subjecting him to the egregious conduct outlined above.

145.    DeShazo outrageously and intentionally inflicted emotional distress upon Plaintiff by condoning and ratifying the conduct and by its refusal to take prompt, adequate, and corrective action.

146.    DeShazo's conduct, as set out above, was extreme, outrageous and beyond the boundaries of decency in a civilized society, and it proximately caused Plaintiff to suffer great emotional distress for which he claims damages.

147.    DeShazo condoned, authorized, and/or ratified the conduct because it knew or should have known of the outrageous conduct towards Plaintiff and failed to take any action to prevent or stop such unlawful conduct. DeShazo had knowledge of the illegal activity due to the participation in the activity by its managers and because of the complaints of Plaintiff and a previously-filed lawsuit by other former employees of DeShazo.

148.    DeShazo acted with malice and/or reckless indifference towards Plaintiff.

### H.   COUNT SEVEN - NEGLIGENT AND/OR WANTON SUPERVISION CLAIM AGAINST DESHAZO CRANE

149.   Plaintiff adopts and realleges paragraphs one (1) through thirty-one (31) and paragraphs thirty-four (34) through forty-five (45) as if fully set forth herein.

150.   This claim arises under the law of the State of Alabama to redress Defendant's negligent and/or wanton supervision of employees, supervisors, management and Human Resources.

151.   Plaintiff was subjected to the conduct outlined above which was intentional, reckless, extreme and outrageous and such conduct caused emotional distress.

152.   DeShazo was negligent and/or wanton in its supervision of its employees, supervisors, management and Human Resources.

153.   DeShazo had actual knowledge of the conduct of its employees, supervisors, management and Human Resources and DeShazo knew or should have known of such conduct, and failed to take adequate steps to prevent and remedy the situation.  DeShazo had knowledge of the illegal activity due to participation in the activity by its managers and because of the complaints of Plaintiff and the previously-filed claims and lawsuits brought by other employees of DeShazo.

154.   By its actions, DeShazo ratified and/or condoned the illegal conduct

54

of its employees, supervisors, and management towards Plaintiff. DeShazo has negligently and/or wantonly failed to supervise its workforce in order to prevent and stop the outrageous conduct.

155.   DeShazo's failure caused Plaintiff to suffer severe emotional distress, embarrassment, and humiliation.

156.   DeShazo acted with malice and/or reckless indifference and its conduct was wanton and/or grossly negligent.

## I.  COUNT EIGHT - NEGLIGENT AND/OR WANTON TRAINING CLAIM AGAINST DESHAZO CRANE

157.   Plaintiff adopts and realleges paragraphs one (1) through thirty-one (31) and paragraphs thirty-four (34) through forty-five (45) as if fully set forth herein.

158.   This claim arises under the law of the State of Alabama to redress DeShazo's negligent and/or wanton training of employees, supervisors, management, and Human Resources personnel.

159.   Plaintiff was subjected to the conduct outlined above which was intentional, reckless, extreme and outrageous and such conduct caused emotional distress.

160.   DeShazo was negligent and/or wanton in its training of its employees, supervisors, management and Human Resources personnel.

161.   DeShazo had actual knowledge of the conduct of its employees, supervisors, management and Human Resources personnel and DeShazo knew or should have known of such conduct, and failed to take adequate steps to prevent and remedy the situation. DeShazo had knowledge of the illegal activity due to participation in the activity by its managers and because of the complaints of Plaintiff and others and previously-filed lawsuits brought by employees of DeShazo.

162.   By its actions, DeShazo ratified and/or condoned the illegal conduct of its employees, supervisors, and management towards Plaintiff.  DeShazo has negligently and/or wantonly failed to train its workforce in order to prevent and stop the outrageous conduct.

163.   DeShazo's failure caused Plaintiff to suffer severe emotional distress, embarrassment, and humiliation.

164.   DeShazo acted with malice and/or reckless indifference and its conduct was wanton and/or grossly negligent.

## J.  COUNT NINE - NEGLIGENT AND/OR WANTON RETENTION CLAIM AGAINST DESHAZO CRANE

165.   Plaintiff adopts and realleges paragraphs one (1) through thirty-one (31) and paragraphs thirty-four (34) through forty-five (45) as if fully set forth herein.

166.   This claim arises under the law of the State of Alabama to redress

DeShazo's negligent and/or wanton retention of employees, supervisors, management, and Human Resources personnel.

167.   DeShazo negligently retained Tucker and others who participated in racially harassing and tortious behavior despite its actual knowledge that such illegal actions were being taken.

168.   DeShazo had knowledge of the illegal activity due to the participation in the activity by its managers and because of the complaints of Plaintiff and others and previously-filed lawsuits brought by other employees of DeShazo against DeShazo and against Tucker, personally and individually.

169.   DeShazo negligently failed to investigate the allegations of harassment and tortious activity reported to it by Plaintiff and others.  The failure to investigate resulted in further and continued illegal harassment.

170.   Through its action and inaction, DeShazo breached its duty to the Plaintiff to provide a workplace free from racial discrimination, racial harassment and tortious behavior.  DeShazo's negligence caused the Plaintiff harm, including personal injury, emotional distress, embarrassment, and humiliation.

171.   DeShazo acted with malice and/or reckless indifference towards the Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of

this action and award Plaintiff the following relief:

a.     Enter a declaratory judgement that DeShazo's policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C.§1981, as amended;

b.     Grant Plaintiff a permanent injunction enjoining Defendants, their Agents, Successors, Employees, Attorneys, and those acting in concerts with Defendant or at Defendant's request from violating Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. §1981, as amended;

c.     Grant Plaintiff an Order requiring the Defendants to make him whole by granting appropriate declaratory relief, compensatory damages (including damages for mental anguish), punitive damages, interest, attorney fees, expenses, costs; and

d.     Plaintiff prays for such other, further, different or additional relief and benefits as justice may require.

**PLAINTIFF HEREBY REQUESTS TRIAL BY A STRUCK JURY**

/s/Larry R. Mann
LARRY R. MANN
ASB-6625-m64l
Attorney for Plaintiff

**OF COUNSEL:**
Larry R. Mann, Esq.
215 Richard Arrington Jr. Blvd. North

Suite 701
Birmingham, Alabama 35203
Tel: (205) 326-6500
Fax: (205) 324-8660
E-mail: LarryMann@aol.com

/s/Prisca M. Rollins
PRISCA M. ROLLINS
ASB-6535-D67P
Attorney for Plaintiff

**OF COUNSEL:**
Prisca M. Rollins, Esq.
215 Richard Arrington Jr. Blvd. North
Suite 701
Birmingham, Alabama 35203
Tel: (205) 326-6500
Fax: (205) 324-8660
E-mail: mannefile@gmail.com

**PLAINTIFF'S ADDRESS:**

c/o Larry Mann
701 New South Saving Bldg.
215 North 21st Street
Birmingham, AL 35203

**PLEASE SERVE DEFENDANT AT THE FOLLOWING ADDRESS:**

DeShazo Crane Company
c/o Agent for Service of Process
Guy K. Mitchell, Jr.
190 Airpark Industrial Road
Alabaster, AL 35007